# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RUBEN M. DAVIS, CDCR #C-23494, <br><br> Plaintiff, <br><br> vs. <br><br> R. FREGOSO; E. LOYA; M. RESLER; J. ROCHA <br><br> Defendants. | Civil No. 10cv1606 MMA (MDD) <br><br> **ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT PURSUANT TO FED.R.CIV.P. 12(b) AND 12(b)(6)** <br><br> **[ECF No. 32]** |

## I.
### PROCEDURAL BACKGROUND

Ruben M. Davis ("Plaintiff"), a prisoner currently incarcerated at California State Prison - Los Angeles County located in Lancaster, California, proceeding *pro se* and *in forma pauperis,* filed this civil rights action pursuant to 42 U.S.C. § 1983 on July 29, 2010. Currently, Plaintiff is proceeding with his Second Amended Complaint which was filed on May 9, 2011. [Doc. No. 18.] Defendants Fregoso, Loya, Resler and Rocha have filed a Motion to Dismiss pursuant to FED.R.CIV.P. 12(b)[1] and 12(b)(6). [Doc. No. 27.] Plaintiff

---

[1] The Court takes judicial notice that Defendants have provided Plaintiff notice of his opportunity to develop a record and to include in his Opposition to Defendants' Motion whatever arguments and documentary evidence he may have to show that he did, in fact, exhaust all

has filed his Opposition, to which Defendants have replied. [Doc. Nos. 36, 39.] The Court has determined that Defendants' Motion is suitable for disposition upon the papers without oral argument and that no Report and Recommendation from the assigned magistrate judge is necessary. *See* S.D. CAL. CIVLR 7.1(d)(1), 72.3(e).

## II.

### FACTUAL ALLEGATIONS

Plaintiff was housed at Calipatria State Prison ("CAL") in 2008. (*See* SAC at 4.) On August 4, 2008, Plaintiff's cellmate, Eric Lindfors, had a meeting with an Imperial County Public Defender who was requesting Lindfor's assistance in testifying on behalf of his client, another inmate who had been housed at CAL. (*Id.*) Specifically, Deputy Public Defender Henry Yorgey noted that Lindfors had previously filed grievances against Defendant Rocha, a CAL correctional officer, and he wanted Lindfors to testify that Defendant Rocha engaged in corruptive practices. (*Id.*) Lindfors agreed to testify. (*Id.*)

Approximately one month later, Plaintiff alleges Defendant Rocha approached him and said "you better get Lindfors to shut his mouth or else he will end up like inmate Flores." (*Id.*) It is alleged that Inmate Flores was retaliated against by Defendants Rocha and Resler for filing grievances against them by planting a weapon in his cell. (*Id.*)

In that same time frame, Plaintiff was approached by Inmate Cervantes who told Plaintiff that Defendants Rocha and Resler knew which inmates were providing testimony against Defendant Rocha. (*Id.*) Defendants Rocha and Resler would verbally harass Plaintiff and his cellmate by threatening to retaliate against them if Plaintiff continued to testify. (*Id.* at 5.) Plaintiff wrote to the Deputy Public Defender regarding his fear of retaliation by Defendants Rocha and Resler. (*Id.*)

That same evening, Plaintiff was informed by Inmate Singerman that Defendants Rocha and Resler "had pulled [Singerman] to the side and told him that Lindfors is snitching on Rocha and Resler." (*Id.* at 6.) Singerman told Plaintiff that he was ordered to tell Lindfors "that he better keep his mouth shut" otherwise Plaintiff's legal mail would never

---

administrative remedies as were available to him prior to filing suit as required by *Wyatt v. Terhune*, 315 F.3d 1108, 1119-20 (9th Cir. 2003). [Doc. No. 32-4.]

"leave the prison." (*Id.*) Singerman would not provide Plaintiff or Lindfors with a declaration because he feared retaliation by Defendants Rocha and Resler. (*Id.*) On October 4, 2008, Defendants Resler and Rocha pulled Inmate Singerman aside again. Plaintiff claims Defendant Resler began "rambling on about retaliating against Plaintiff and Lindfors." (*Id.*) However, Defendant Rocha is alleged to have said to Defendant Resler to "be quiet, you are going to ruin the surprise I have for Lindfors." (*Id.*) Again, Inmate Singerman refused to provide Plaintiff or his cellmate with a declaration because he did not "want any problems with those crooked cops." (*Id.*)

Two days later, on October 6, 2008, Plaintiff learned that his facility was placed on lockdown in order that cell searches may be conducted. (*Id.*) Defendant Resler, while passing out dinner trays, said to Plaintiff and his cellmate that he would be searching their cell the next day and he could not "wait to come up in there (Plaintiff's cell)." (*Id.* at 7.) Plaintiff and his cellmate believed that was a threat to find planted contraband in their cell so they wrote letters to their families, Deputy Public Defendant Yorgey, and Warden Small informing them they were being retaliated against and likely would end up in "the hole" by the end of the week. (*Id.*) They sent the letters under a different inmate's name to avoid detection. (*Id.*)

On October 9, 2008, when the search began in Lindfors's facility, Plaintiff "observed Rocha and Resler enter the building together with personal carrying bags in their hands." (*Id.* at 8.) Plaintiff claims that Defendant Rocha and Resler "had a meeting" with Defendant Loya. (*Id.*) Plaintiff attempted to inform other correctional officers, Defendants E. Garcia and Fregoso, of their fear of retaliation. (*Id.*) Plaintiff requested that Garcia and Fregoso search his cell in place of Rocha and Resler but they refused. (*Id.* at 9.) Fregoso is alleged to have walked away while Plaintiff claims Defendant Garcia said he would "relay those concerns to his supervisor." (*Id.*) Later, Plaintiff spoke to Sergeant Rutledge relaying his concerns. (*Id.*) Sergeant Rutledge promised to speak to another supervisor. (*Id.*) A few minutes later, Sergeant Rodriquez came to his cell and Plaintiff "reiterated all of the concerns above." (*Id.*) Sergeant Rodriguez, in turn, spoke to Lieutenant Valenzuela about Plaintiff's

concerns.  (*Id.* at 10.)  Plaintiff alleges that Lieutenant Valenzuela "clearly tipped [Defendant Resler] off to [Plaintiff's] complaints' of retaliation by Defendants Resler and Rocha.  (*Id.* at 10.)

Plaintiff claims Defendants Rocha, Resler, and Loya gathered to have a meeting.  (*Id.*)  During this conference and in the events following, Plaintiff claims Defendant Loya kept looking at Plaintiff's cell "with a smirk" on his face.  (*Id.*)  Plaintiff, along with Inmate Lindfors, wrote on a "piece of blue paper" their version of the incidents that were happening, recorded the date and time, and placed the paper behind a picture in a photo album in their cell.  (*Id.* at 10.)  Later that day, Correctional Officers Manning and Lizarraga conducted a "thorough cell and property search" of Plaintiff's cell.  (*Id*. at 11.)  This search included an "x-ray scan of all of Plaintiff's personal property."  (*Id.*)  There were no findings of contraband.  (*Id.* at 12.)  Plaintiff and his cellmate were "cleared" to return to their cell.  (*Id.*)

Before Plaintiff and his cellmate entered their cell, Plaintiff claims Defendant Loya "walked into their cell," and came out to inform the escorting correctional officers that he had "just discovered an inmate manufactured weapon inside Plaintiff's cell, inside Plaintiff's accordion legal folder sticking out in open view."  (*Id.*)  Plaintiff and his cellmate were placed under arrest and sent to the "clinic holding cells."  (*Id.* at 12.)  Plaintiff and Inmate Lindfors informed Sergeant Rutledge of the blue note they had placed in their cell and asked Sergeant Rutledge to retrieve the note.  (*Id.*)  Sergeant Rutledge returned to the cell, "retrieved the blue note, made a memorandum to it and turned it all in to Captain Miller.  (*Id.*)

Later that day, Sergeant Mata issued a "lock-up order" to Plaintiff and his cellmate for possession of an inmate weapon and "ordered separate [correctional officers] to escort them to the hole."  (*Id.*)  Plaintiff claims this allowed Defendant Rocha to have "full access to Plaintiff's personal property still inside" his cell.  (*Id*.)  Plaintiff claims Defendant Rocha "proceeded to trash and destroy both inmates' legal, educational, appliances, clothing and religious personal property."  (*Id.*)  Plaintiff filed administrative grievances objecting to the destruction of his property.  (*Id.* at 13.)

Captain Miller came to Ad-Seg the next day to conduct Plaintiff's initial disciplinary hearing. (*Id.*) Miller confirmed that Sergeant Rutledge had found the blue note and had turned it over to her. (*Id.*) On October 21, 2008, Plaintiff received his Rules Violation Report charging him with possession of an inmate manufactured weapon. (*Id.*) In this report, along with the accompanying documents, was a report by Defendant Fregoso claiming that he was in the cell with Defendant Loya when he found the weapon. (*Id.* at 14.) However, Defendant Loya's report indicated that Defendant Fregoso "was out on the tier" at the time he allegedly found the weapon in Plaintiff's cell. (*Id.*)

Plaintiff alleges Lieutenant Beltron investigated the conspiracy claim against Rocha, Resler and Loya. (*Id.* at 15.) Beltran allegedly told Plaintiff that he was "offended" that Plaintiff accused "'his boys' of corruption." (*Id.*) Beltran then denied Plaintiff's grievances. (*Id.*)

## III.

### DEFENDANTS' MOTION TO DISMISS PURSUANT TO FED.R.CIV.P. 12(b)

As a preliminary matter, the Court will first consider Defendant Fregoso's argument that the claims against him in Plaintiff's Second Amended Complaint should be dismissed for failing to exhaust available administrative remedies pursuant to Federal Rule of Civil Procedure 12(b) and 42 U.S.C. § 1997e(a).

**A.    Standard of Review per FED.R.CIV.P. 12(b) and 42 U.S.C. § 1997e(a)**

Defendant Fregoso claims Plaintiff failed to exhaust available administrative remedies as to the claims against him pursuant to 42 U.S.C. § 1997e(a) before bringing this suit, therefore, Fregoso seeks dismissal under the "non-enumerated" provisions of Rule 12(b). The Ninth Circuit has held that "failure to exhaust nonjudicial remedies is a matter of abatement" not going to the merits of the case and is properly raised pursuant to a motion to dismiss, including a non-enumerated motion under Rule 12(b). *See Wyatt v. Terhune*, 315 F.3d 1108, 1119 (9th Cir. 2003). It is also well established that non-exhaustion of administrative remedies as set forth in 42 U.S.C. § 1997e(a) is an affirmative defense which defendant prison officials have the burden of raising and proving. *See Jones v. Bock,* 594

U.S. 199, 216 (2007); *Wyatt*, 315 F.3d at 1119. However, unlike under Rule 12(b)(6), "[i]n deciding a motion to dismiss for failure to exhaust nonjudicial remedies, the court may look beyond the pleadings and decide disputed issues of fact." *Wyatt*, F.3d at 1120.

### B. Exhaustion of Administrative Remedies per 42 U.S.C. § 1997e(a)

The Prison Litigation Reform Act ("PLRA") amended section 1997e(a) to provide that "[n]o action shall be brought with respect to prison conditions under section 1983 . . . by a prisoner confined in any jail, prison or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "Once within the discretion of the district court, exhaustion in cases covered by § 1997e(a) is now mandatory." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). 42 U.S.C. § 1997e(a) has been construed broadly to "afford [ ] corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case," *id.* at 525-26, and to encompass inmate suits about both general circumstances and particular episodes of prison life – including incidents of alleged excessive force. *Id.* at 532. Finally, "[t]he 'available' 'remed[y]' must be 'exhausted' before a complaint under § 1983 may be entertained," "regardless of the relief offered through administrative procedures." *Booth v. Churner*, 532 U.S. 731, 738, 741 (2001); *see also McKinney v. Carey*, 311 F.3d 1198, 1200-01 (9th Cir. 2002).

The State of California provides its prisoners and parolees the right to administratively appeal "any departmental policies, decisions, actions, conditions, or omissions that have a material adverse effect on the welfare of inmates and parolees." CAL. CODE REGS., tit. 15 § 3084.1(a) (2011). Prior to January 28, 2011, in order to exhaust available administrative remedies within this system, a prisoner would proceed through several levels: (1) informal resolution, (2) formal written appeal on a CDC 602 inmate appeal form, (3) second level appeal to the institution head or designee, and (4) third level appeal to the Director of the California Department of Corrections. CAL. CODE REGS., tit. 15 § 3084.1(a) (2010). However, in January 2011, the process was changed. Following January 28, 2011, prison regulations no longer required an inmate to submit to informal resolution while the other remaining levels remain the same. CAL. CODE REGS. tit. 15 § 3084.5 (2011).

### C. Application of 42 U.S.C. § 1997e(a) to Plaintiff's Case

Defendant Fregoso argues that Plaintiff failed to exhaust his administrative remedies *prior* to filing this lawsuit. In support of his claim, Defendant Fregoso supplies the declaration of P. Alaniz, the Appeals Coordinator at CAL and D. Foston, the Chief of the Office of Appeals for the California Department of Corrections and Rehabilitation ("CDCR"). [Doc. Nos. 32-2, 32-3.] In his Declaration, Alaniz indicates that he conducted a "thorough search of our records," and this search revealed that his office has no record of receiving any inmate appeal made by Plaintiff regarding Defendant Fregoso. (Alinez Decl. at ¶6.) In addition, Foston declares that a review of records within the "Office of Appeals" in Sacramento indicated that they had not "received or accepted, processed, or screened out any inmate appeals filed by Ruben M. Davis, CDCR No. C-34494, against Officer Fregoso" related to any of the claims against Defendant Fregoso found in Plaintiff's Second Amended Complaint. (Foston Decl. at ¶ 7.)

Plaintiff claims in his Opposition that he did file an administrative appeal relating to the claims against Defendant Fregoso. (*See* Pl.'s Opp'n at 4.) In support of his argument, Plaintiff has attached "Exhibit A" which is an Inmate/Parolee Appeal Form dated by Plaintiff on July 6, 2009. (*Id.*, Exhibit A.) A review of this administrative grievance shows that Plaintiff is seeking to file a "citizens complaint" against Defendant Fregoso, among others, for an incident dated October 9, 2008. (*Id.*) In his Declaration, Alaniz confirms this appeal was screened out for a number of reasons including the fact that it "duplicated a previous appeal" and "it asserted new claims or new parties not included in the previous appeal (such as Officer Fregoso)." (Alaniz Decl. in supp. of Defs.' Reply (Doc. No. 45-1) at ¶ 4.). Moreover, Defendants argue that Plaintiff submitted this grievance against Defendant Fregoso on July 6, 2009 for an incident that was alleged to have occurred on October 9, 2008. (*Id.*) The regulations at the time required a grievance to be filed fifteen days "after the incident complained of" and Plaintiff filed this grievance nearly nine months too late. (*Id.*)

The Supreme Court has made clear that Plaintiff must "properly exhaust" his administrative remedies before filing a prison conditions action. In *Woodford v. Ngo*, 548

U.S. 81, 91 (2006), the Supreme Court held that "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Woodford*, 548 U.S. at 91. The Court further held that "[proper exhaustion] means . . . a prisoner must complete the administrative review process in accordance with the applicable procedural rules . . . as a precondition to bring suit in federal court." *Id.*

Plaintiff has failed to rebut Defendant Fregoso's showing that he did not properly exhaust his administrative grievances prior to bringing this action. Thus, the Court **GRANTS** Defendant Fregoso's Motion to Dismiss all the claims against him found in Plaintiff's Second Amended Complaint for failing to exhaust his administrative remedies as required by 42 U.S.C. § 1997e(a). This dismissal is without prejudice to permit Plaintiff to file a separate action once he has properly exhausted his administrative remedies. The Court will not address the remainder of the claims against Defendant Fregoso in Defendants' Motion as dismissal of all the claims against him without prejudice is warranted at this time.

## IV.

### DEFENDANTS' MOTION TO DISMISS PURSUANT TO FED.R.CIV.P. 12(b)(6)

Defendants seek to dismiss of Plaintiff's Second Amended Complaint pursuant Federal Rule of Civil Procedure 12(b)(6) on grounds that: (1) it fails to allege facts sufficient to show that Defendant Loya conspired against Plaintiff; (2) it fails to state a First Amendment retaliation claim; and (3) Defendant Loya is entitled to qualified immunity.

**A.    FED.R.CIV.P. 12(b)(6) Standard of Review**

A Rule 12(b)(6) dismissal may be based on either a "'lack of a cognizable legal theory' or 'the absence of sufficient facts alleged under a cognizable legal theory.'" *Johnson v. Riverside Healthcare System, LP*, 534 F.3d 1116, 1121-22 (9th Cir. 2008), quoting *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). In other words, the plaintiff's complaint must provide a "short and plain statement of the claim showing that [he] is entitled to relief." *Id.,* citing FED.R.CIV.P. 8(a)(2). "Specific facts are not necessary; the statement need only give the defendant[s] fair notice of what . . . the claim is and the grounds

1  upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 127 S. Ct. 2197, 2200 (2007)
2  (internal quotation marks omitted).

3       A motion to dismiss should be granted if plaintiff fails to proffer "enough facts to state
4  a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570
5  (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows
6  the court to draw the reasonable inference that the defendant is liable for the misconduct
7  alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) .

8       In addition, factual allegations asserted by *pro se* petitioners, "however inartfully
9  pleaded," are held "to less stringent standards than formal pleadings drafted by lawyers."
10 *Haines v. Kerner*, 404 U.S. 519-20 (1972). Because "*Iqbal* incorporated the *Twombly*
11 pleading standard and *Twombly* did not alter courts' treatment of *pro se* filings, [courts]
12 continue to construe *pro se* filings liberally when evaluating them under *Iqbal*." *Hebbe v.*
13 *Pliler*, 627 F.3d 338, 342 & n.7 (9th Cir. 2010), citing *Bretz v. Kelman*, 773 F.2d 1026, 1027
14 n.1 (9th Cir. 1985).

15     **B.**    **Conspiracy claims against Defendant Loya**

16      Defendant Loya moves to dismiss the conspiracy claim against him on the grounds
17 that Plaintiff has failed to allege sufficient facts to show that "Defendant Loya entered into an
18 agreement with Defendants Resler and Rocha to retaliate against Plaintiff." (*See* Defs.'
19 Memo of Ps&As in Supp. of MTD at 7.)

20      To state a claim for conspiracy under section 1983, Plaintiff must alleges facts to
21 show: (1) the existence of an agreement between Defendants to deprive him of his
22 constitutional rights; and the actual deprivation of his constitutional rights because of that
23 agreement. *See Avalos v. Baca*, 596 F.3d 583, 592 (9th Cir. 2010); *Margolis v. Ryan*, 140
24 F.3d 850, 853 (9th Cir. 1998) (to state claim for conspiracy under § 1983, plaintiff must
25 allege facts showing an agreement among the alleged conspirators to deprive him of his
26 rights). Conclusory allegations of wide-spread conspiracy, however, are insufficient to state
27 a valid section 1983 claim. *Burns v. County of King*, 883 F.2d 819, 821 (9th Cir. 1989) (per
28 curiam); *see also Ivey v. Board of Regents*, 673 F.2d 266, 268 (9th Cir. 1982) ("Vague and

conclusory allegations of official participation in civil rights violations are not sufficient to withstand a motion to dismiss.").

Defendant Loya maintains that Plaintiff's allegations are "too speculative and conclusory." (*See* Defs.' Memo of Ps&As in Supp. of MTD at 8.) Here, Plaintiff alleges that Defendants Resler, Rocha, and Loya engaged in conversations immediately preceding the cell searches. (*See* SAC at 10.) Plaintiff alleges that during these conversations Defendants Resler, Rocha, and Loya would continuously stare at Plaintiff's cell with "smirks on their faces." (*Id.* at 9-10.) Plaintiff alleges that after his cell was searched by other officers, and before he was about to be returned to his cell, Defendant Loya "walked into [Plaintiff's] cell and directly backed out" and informed the other correctional officers that Loya has "just discovered an inmate manufactured weapon inside Plaintiff's cell." (*Id.* at 11.) Plaintiff alleges that the previous conversations between Resler, Rocha, and Loya was the basis for the conspiracy to retaliate against Plaintiff by allegedly planting an inmate manufactured weapon in Plaintiff's cell. (*Id.* at 9-12.) While Plaintiff does not allege that he overheard the exact conversations, his allegations relating to the mannerisms of the Defendants, the timing of the conversations related to the cell search, and discovery of the weapon are sufficient at this stage of the case to allege a conspiracy claim against Defendant Loya.

In addition, Defendant Loya moves to dismiss the conspiracy claims relating to the events that allegedly took place with Defendant Fregoso who has been dismissed from this action. Plaintiff alleges that these two Defendants conspired when they wrote their reports following the finding of the weapon in Plaintiff's cell. Specifically, Plaintiff alleges Defendants Loya and Fregoso wrote false reports "to cover up a crime committed by [Defendant Loya]." (SAC at 14.) Plaintiff claims Fregoso wrote a report that he was a witness to Defendant Loya finding the weapon in Plaintiff's cell. (*Id.*) However, Plaintiff then alleges Defendant Loya wrote a report indicating that Fregoso was "out on the tier at the time of the weapon discovery." (*Id.*) These two contradictory reports, as alleged by Plaintiff, would defeat any claim of a "meeting of the minds" between Fregoso and Loya.

Plaintiff "must show 'an agreement or "meeting of the minds" to violate constitutional rights.'" *Hart v. Parks*, 450 F.3d 1059, 1069 (9th Cir. 2006), citing *Franklin v. Fox*, 312 F.3d 423, 441 (9th Cir. 2002); *Margolis v. Ryan*, 140 F.3d 850, 853 (9th Cir. 1998) (to state claim for conspiracy under section 1983, plaintiff must allege facts showing an agreement among the alleged conspirators to deprive him of his rights). Here, Plaintiff has failed to allege any facts that would demonstrate a meeting of the minds between Fregoso and Loya.

For the above stated reasons, the Court **GRANTS**, in part, and **DENIES**, in part, Defendant Loya's Motion to Dismiss all the conspiracy claims against him. The Court **DENIES** Defendant's Motion as to the conspiracy claims relating to Resler and Rocha and **GRANTS** Defendant's Motion as to the conspiracy claims relating to Fregoso.

### C. Retaliation claims

All Defendants move to dismiss Plaintiff's retaliation claims on the ground that he has failed to adequately allege a claim upon which relief may be granted. (*See* Defs. Ps&As in Supp. of Mot. at 9-10.) Of fundamental import to prisoners are their First Amendment "right[s] to file prison grievances," *Bruce v. Ylst*, 351 F.3d 1283, 1288 (9th Cir. 2003), and to "pursue civil rights litigation in the courts." *Schroeder v. McDonald*, 55 F.3d 454, 461 (9th Cir. 1995). Without those bedrock constitutional guarantees, inmates would be left with no viable mechanism to remedy prison injustices. *Rhodes v. Robinson*, 408 F.3d 559, 567 (9th Cir. 2005). "And because purely retaliatory actions taken against a prisoner for having exercised those rights necessarily undermine those protections, such actions violate the Constitution quite apart from any underlying misconduct they are designed to shield." *Id.*, citing *Pratt v. Rowland*, 65 F.3d 802, 806 & n.4 (9th Cir. 1995).

"[A] viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes*, 408 F.3d at 567-68 (footnote omitted), citing *Resnick v. Hayes*, 213 F.3d 443, 449 (9th Cir. 2000); *Barnett v. Centoni*, 31 F.3d 813, 815-16 (9th Cir. 1994).

1    Here, Defendants maintain that Plaintiff cannot meet the "second prong" of a
2 retaliation claim because he has failed to allege facts to support the claim that Defendants
3 retaliated against him "because he had exercised his First Amendment rights (or because he
4 had engaged in any protected conduct.)" (Defs. Memo. Ps&As in Supp. of MTD at 10.)
5 The Court disagrees. Plaintiff alleges that he engaged in protected conduct throughout his
6 Second Amended Complaint. For example, Plaintiff alleges that he wrote a "citizen's
7 complaint" against Rocha and Resler which resulted in further retaliatory acts by those
8 Defendants. (*See* SAC at 6.) Plaintiff also alleges that he wrote to Warden Small about his
9 concerns over the actions of Rocha and Resler. (*Id.* at 7.) After Plaintiff wrote to the
10 Warden, Plaintiff's cell was searched and he alleges that Rocha and Resler entered into a
11 conspiracy to plant an weapon in his cell in retaliation for Plaintiff filing complaints against
12 them. (*Id.*) Accordingly, there are sufficient facts to find that Plaintiff has alleged that he
13 engaged in "protected conduct" such that he has adequately stated a retaliation claim against
14 the remaining Defendants. Thus, Defendants' Motion to Dismiss Plaintiff's retaliation
15 claims pursuant to Rule 12(b)(6) is **DENIED**.

16    **D.    Qualified Immunity**

17    Finally, Defendant Loya claims he is entitled to qualified immunity. (*See* Defs.'
18 P&As in Supp. of Mot. at 11-12.) "Government officials enjoy qualified immunity from
19 civil damages unless their conduct violates 'clearly established statutory or constitutional
20 rights of which a reasonable person would have known.'" *Jeffers v. Gomez*, 267 F.3d 895,
21 910 (9th Cir. 2001), quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). When
22 presented with a qualified immunity defense, the central questions for the court are: (1)
23 whether the facts alleged, taken in the light most favorable to Plaintiff, demonstrate that the
24 Defendant's conduct violated a statutory or constitutional right; and (2) whether the right at
25 issue was "clearly established" at the time it is alleged to have been violated. *Saucier v.*
26 *Katz*, 533 U.S. 194, 201 (2001). Although *Saucier* originally required the Court to answer
27 these questions in order, the U.S. Supreme Court has recently held that "while the sequence
28

set forth there is often appropriate, it should no longer be regarded as mandatory." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

If the Court finds that Plaintiff's allegations do not make out a statutory or constitutional violation, "there is no necessity for further inquiries concerning qualified immunity." *Saucier*, 533 U.S. at 201. Similarly, if the Court determines that the right at issue was not clearly established at the time of the defendant's alleged misconduct, the Court may end further inquiries concerning qualified immunity without determining whether the allegations in fact make out a statutory or constitutional violation. *Pearson*, 555 U.S. at 236.

As stated above, with respect to the first prong, the Court has found that Plaintiff has alleged facts, taken in the light most favorable to him, sufficient to state a conspiracy claim as to Defendant Loya. Thus, "the next, sequential step" is to ask whether Plaintiff's constitutional rights "w[ere] clearly established" at the time. *Saucier*, 533 U.S. at 201.

A right is "clearly established" when its contours are "sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Id.* at 202. This does not mean "that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful." *Hope v. Pelzer*, 536 U.S. 730, 739 (2002). Instead, "in the light of pre-existing law[,] the unlawfulness must be apparent." *Id.* The "salient question" is whether the state of the law at the time gives officials "fair warning" that their conduct is unconstitutional. *Id.* at 740. "This inquiry . . . must be undertaken in light of the specific context of the case, not as a broad general proposition." *Saucier*, 533 U.S. at 202; *Crowell v. City of Coeur D'Alene*, 339 F.3d 828, 846 (9th Cir. 2003). Indeed, "[o]fficials can still be on notice that their conduct violates established law even in novel factual circumstances." *Hope*, 536 U.S. at 741. In order to find that the law was clearly established, then, the Court "need not find a prior case with identical, or even 'materially similar,' facts." *Flores v. Morgan Hill Unified Sch. Dist.,* 324 F.3d 1130, 1136-37 (9th Cir. 2003), quoting *Hope,* 536 U.S. at 741. Because qualified immunity is an affirmative defense, however, the burden of proof lies with the party asserting it. *Harlow*, 457 U.S. at 812.

Defendant Fregoso is the only defendant to make any argument with respect to the second prong of a qualified immunity analysis. As stated above, the Court finds that Plaintiff has prevailed as to the first prong of qualified immunity with respect to the conspiracy claims against Defendant Loya. However, Defendants' motion is devoid of any argument that may have been raised regarding Defendant Loya's purported entitlement to qualified immunity under the second prong. Thus, Defendant Loya's Motion to Dismiss based on qualified immunity grounds is **DENIED**.

## IV.

### CONCLUSION AND ORDER

Based on the foregoing, **IT IS HEREBY ORDERED THAT**:

(1) The Court **GRANTS** Defendant Fregoso's Motion to Dismiss all claims against him found in Plaintiff's Second Amended Complaint for failure to exhaust his administrative remedies pursuant to Federal Rule of Civil Procedure 12(b) and 42 U.S.C. § 1997e(a) without prejudice. The Clerk of Court shall terminate this Defendant from the docket.

(2) The Court **GRANTS** in part and **DENIES** in part Defendant Loya's Motion to Dismiss Plaintiff's conspiracy claims pursuant to Federal Rule of Civil Procedure 12(b)(6).

(3) The Court **DENIES** Defendants' Motion to Dismiss Plaintiff's retaliation claims pursuant to Federal Rule of Civil Procedure 12(b)(6).

(4) The Court **DENIES** Defendant Loya's Motion to Dismiss Plaintiff's Second Amended Complaint on qualified immunity grounds pursuant to Federal Rule of Civil Procedure 12(b)(6).

**IT IS FURTHER ORDERED THAT:**

(5) Defendants Loya, Rocha, and Resler shall serve and file an Answer to Plaintiff's Second Amended Complaint within the time prescribed by Federal Rule of Civil Procedure 12(a)(4)(B).

**IT IS SO ORDERED.**

DATED: September 25, 2012

HON. MICHAEL M. ANELLO
United States District Judge